UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| FORTNA SYSTEMS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | SA-24-CV-1274-OLG (HJB) |
| PLUS ONE ROBOTICS, INC., | § § § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns the Motion to Dismiss Second Amended Complaint filed by Defendant Plus One Robotics, Inc. ("Plus One"). (Docket Entry 19.) Pretrial matters have been referred to the undersigned. (Docket Entry 27.) For the reasons set out below, I recommend that Defendant's motion (Docket Entry 19) be **DENIED**.

**I.      Jurisdiction.**

The Court has jurisdiction over patent infringement disputes pursuant to 28 U.S.C. § 1338(a). The undersigned has the authority to issue this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

**II.     Background.**

Plaintiff Fortna Systems, Inc. ("Fortna") accuses Plus One of infringing two of its patents, both directly and indirectly. (Docket Entry 1, at 12–13, 18–19.) Fortna's first patent, U.S. Patent No. 11,753,256 (the "256 Patent"), was issued by the United States Patent and Trademark Office ("USPTO") on September 12, 2023. (Docket Entry 15, at 3; Docket Entry 15-1, at 2.) Fortna's second patent, U.S. Patent No. 12,059,803 (the "803 Patent"), was issued by the USPTO on August

13, 2024.  (Docket Entry 15, at 3; Docket Entry 15-2, at 2.)  Both patents protect similar inventions, which consist of systems of conveyors and robotic arms that organize and streamline "the handling of parcels within a sorting or similar facility."  (Docket Entry 15-1, at 21; Docket Entry 15-2, at 23.)

Plus One's allegedly offending invention was announced at a press release on May 7, 2024.  (Docket Entry 15, at 4.)  Dubbed "InductOne: A Dual-Arm Automated Parcel Induction Solution to Maximize Throughput," the accused product also consists of conveyors and robotic arms designed to organize and streamline the movement of parcels at "high-volume fulfillment and distribution centers." (Docket Entry 15, at 4.)  On May 24, 2024, Fortna sent a notice letter to Plus One, alleging that its InductOne product infringed the 256 Patent.  (*Id.* at 5.)  Plus One denied any infringement in a response letter on June 20, 2024.  (*Id.*)  On September 5, 2024, Fortna sent another letter to Plus One, this time alleging that its InductOne product infringed the 803 Patent, and demanding that Plus One immediately cease and desist from making, selling, offering, or importing its InductOne product.  (*Id.*)  Plus One did not respond.  (*Id.*)

Fortna filed this lawsuit on September 6, 2024 (Docket Entry 1), and it amended its complaint twice before Plus One filed any response (Docket Entries 10 and 15).  In its live Second Amended Complaint, Fortna alleges that Plus One's InductOne product infringes both the 256 Patent (Count I) and the 803 Patent (Count II).  (Docket Entry 15.)  Plus One now moves for dismissal of the Second Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).  (Docket Entry 19.)  Fortna has responded to the motion (Docket Entry 22), and Plus One has filed a reply (Docket Entry 23).

### III. Legal Standard.

The Court may dismiss a complaint when it fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "Rule 12(b)(6) motions are viewed with disfavor and rarely granted." *Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) (internal marks omitted). To survive dismissal, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the well-pleaded facts allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In ruling on a 12(b)(6) motion, "the Court assumes the truth of well-pleaded factual allegations and reasonable inference[s] therefrom." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 181 (2024) (internal marks omitted). The Court's inquiry is generally "limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). However, the Court may also consider documents attached to the motion when they "are referenced in the complaint and are central to the plaintiff's claims." *Id.*

### IV. Discussion.

The inventions claimed in both the 256 Patent and 803 Patent are conveyor systems comprised of, *inter alia*, "a picking area" from which parcels are removed by robotic arms and placed onto a "place conveyor" positioned "downstream of the picking area." (Docket Entry 15-2, at 34.) The gravamen of Plus One's motion to dismiss is a dispute over the proper construction of the term "downstream." According to Plus One, "downstream" can only be understood to denote relative *physical* location. (Docket Entry 19, at 10–16.) Specifically, Plus One construes "downstream" to mean "physically positioned in-line with and forward of." (*Id.* at 13.) According

3

to Fortna, "downstream" does not denote physical location but, rather, *sequential* location. (Docket Entry 22, at 8–9.)  That is, Fortna construes "downstream" to mean "at a location where a process or processes occurring later in a sequence take place." (*Id.* at 9.)

Absent unusual circumstances, resolving the parties' dispute over the proper construction of "downstream" would be inappropriate at this early stage of the case.  "The general rule is that courts do not engage in claim construction at the pleadings stage unless it is clear that the claims cannot plausibly be construed to cover the accused instrumentalities." *OBD Sensor Sols. LLC v. Track What Matters, L.L.C.*, No. 2:22-CV-124-JRG-RSP, 2023 WL 1827922, at *2 (E.D. Tex. Jan. 20, 2023) (collecting cases from Federal Circuit), *report and recommendation adopted*, No. 2:22-CV-00124-JRG, 2023 WL 1818268 (E.D. Tex. Feb. 8, 2023).  In making that determination, district courts should "afford claims their broadest possible construction." *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1343 n.13 (Fed. Cir. 2012); *accord Gestion Proche, Inc. v. Dialight Corp.*, No. 4:16-CV-407, 2017 WL 1551606, at *3 (E.D. Tex. May 1, 2017).  In other words, a motion to dismiss that hinges on claim construction must be denied unless even the broadest possible construction could not plausibly cover the accused instrumentalities.  *OBD Sensor*, 2023 WL 1827922, at *2.  This stringent test is necessary because arguments that "boil down to objections to . . . proposed claim construction" are not typically "suitable for resolution on a motion to dismiss, "*Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018), and courts regularly "refuse[] to construe [a] key term without the benefit of full briefing, in compliance with the established procedures for claim construction," *Gestion Proche*, 2017 WL 1551606, at *3.

Applying the "broadest possible construction" rule to the dispute in this case, Plus One's arguments fail.  For example, Plus One disputes Fortna's "sequential" construction, arguing that it

renders the term "downstream" superfluous in light of other language in its patents that sufficiently clarify the sequence of events. (Docket Entry 19, at 11.) It points to a sentence in claim 1 of Fortna's 803 patent, which describes "a first place conveyor *positioned downstream* of the picking area *and configured to receive parcels* transferred from the picking area." (*Id.* at 12 (emphasis in original and internal marks omitted).) According to Plus One, the phrase "and configured to receive parcels" renders "positioned downstream" redundant under Fortna's construction, since the thing that receives is always, necessarily positioned later in a sequence than the thing that gives. (*Id.*) Even if Plus One's construction is reasonable, it is not the only reasonable possible construction: "positioned downstream" could be used to convey sequence—a question of *where* or *when*—while "configured to receive parcels" might primarily serve to describe the event to occur at that step in the sequence—a question of *what*. Under that broader, possible construction, Plus One's redundancy argument fails.

Plus One also relies on the specifications and figures in the patents to support its preferred construction. Specifically, Plus One points to figures 2 and 12 in the 256 Patent. (*Id.* at 12–13.) Figure 2 depicts a conveyor system in which the place conveyor is "physically positioned in-line with and forward of" of the pick conveyor, and it is described as "[a] place conveyor . . . positioned downstream of the pick conveyor." (*Id.* at 13; Docket Entry 15-1, at 5, 22.) Meanwhile, Figure 12 depicts two place conveyors positioned alongside one another, and parallel to one another, and it is described as "a second place conveyor . . . positioned in side-by-side relation to the first place conveyor." (Docket Entry 19, at 13; Docket Entry 15-1, at 15, 30.) According to Plus One, this shows that Fortna intended the phrase "positioned downstream" to denote physical position—specifically, the physical placement of one thing in-line with and forward of another thing. (Docket entry 19, at 16.) Again, Plus One's conclusion does not *necessarily* follow from the cited

5

examples. In the side-by-side example, the so-called "second place conveyor" ostensibly is not second by virtue of anything sequential in nature—rather, it appears from the figures that both the first and second place conveyors receive parcels from the pick conveyor contemporaneously. Thus, the use of the phrase "side-by-side" in some figures and specifications and "positioned downstream" in others does not necessarily contradict Fortna's sequential construction of the latter phrase.

Fortna advances additional reasons for denying Plus One's motion to dismiss. First, it argues that its sequential construction of "downstream" is consistent with a directional construction previously adopted by the Federal Circuit in *Rosetta-Wireless Corp. v. Samsung Elec. Co., Ltd*, 764 Fed. Appx. 881, 887 (Fed. Cir. 2019) ("[W]e agree with the Board that the term 'downstream' signals the . . . direction in which the data is traveling."). (Docket Entry 22, at 8.) And while dictionaries only serve a subordinate role in construing patent claims, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319–24 (Fed. Cir. 2005), it is notable that they define "downstream" in precisely the manner that Fortna construes the term. *See, e.g.*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2022) ("At a later point in a production process or supply chain."); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2003) ("[I]n or toward the latter stages of a usu. industrial process."); OXFORD ENGLISH DICTIONARY ("[I]n or to[ward] the later stages of any industrial, manufacturing, or commercial process.") (https://doi.org/10.1093/OED/7830598749) (last visited June 27, 2025); CAMBRIDGE DICTIONARY ("[U]sed to describe something that happens later in a process or series of events.") (https://dictionary.cambridge.org/dictionary/english/downstream) (last visited June 27, 2025). The Court "may also rely on dictionary definitions when construing claim terms, so long as the[y] do[] not contradict any definition found in or ascertained by a reading of the patent documents."

6

*Phillips*, 415 F.3d at 1322–23.  Not only do the cited dictionary definitions not contradict Fortna's construction of "downstream," they corroborate it.

Fortna also points to Plus One's own patent application—*viz.*, U.S. Patent Application 20024/0217756[1]—which "specifically refer[s] to the flow of parcels as 'downstream' through its system."  (Docket Entry 22, at 15.)  The application describes the claimed invention as a system of conveyors and robotic arms that move objects "toward a downstream induction destination."  (Docket Entry 22-1, at 13.)  Figure 5 of the application depicts the movement of objects on conveyors that are in-line with and forward of one another.  (*Id.* at 10.)  However, in describing Figure 5, the application appears to disavow a physical-position construction of the meaning of "downstream," explaining that "a change in the arrangement or orientation of components . . . would fall within the scope of the invention and would generally follow the same principle of moving objects downstream, *i.e.* from in-feed conveyor towards the induction conveyor which may comprise reversing or otherwise changing the conveyor directions to something other than that depicted."  (*Id.* at 18.)  Thus, it would appear that not even Plus One consistently relies upon its physical-position construction of the term "downstream"—at least not when discussing its own conveyor systems.

For all the reasons stated above, and given the obligations to adopt the "broadest possible construction" of the term "downstream," *see In re Bill of Lading*, 681 F.3d at 1343 n. 13, and to view the pleadings in Fortna's favor, the Court should reject Plue One's arguments.  Contrary to Plus One's assertions, Fortna's patent claims can "plausibly be construed to cover the accused

---

[1] *See Wells v. Tex. Tech Univ.*, No. 5:23-CV-060-H, 2024 WL 2967859, at *8 (N.D. Tex. May 7, 2024) ("In resolving a Rule 12(b)(6) motion, the Court may . . . . take judicial notice of patents, prosecution history, and patent applications, as such information is available as part of the public record on the Patent and Trademark Office's database.") (internal marks omitted) (collecting cases), *aff'd*, No. 24-10518, 2025 WL 673439 (5th Cir. Mar. 3, 2025).

7

instrumentalities." *OBD Sensor Sols. LLC*, 2023 WL 1827922, at *2. Accordingly, rather than break with "the general rule," the Court should "not engage in claim construction at the pleadings stage" and should therefore deny Plus One's motion to dismiss. *See id.*

## V. Conclusion and Recommendation.

Based on the foregoing, I recommend that Plus One's Motion to Dismiss Second Amended Complaint (Docket Entry 19) be **DENIED**.

## VI. Notice of Right to Object.

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this Report and Recommendation must be filed **within 14 days** after being served with a copy of the same, unless this time period is modified by the District Court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The parties shall file any objections with the Clerk of the Court and serve the objections on all other parties. Absent leave of Court, **objections are limited to 20 pages in length**. An objecting party must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; "objections that are frivolous, conclusory, or general in nature needn't be considered." *Williams v. Lakeview Loan Serv. LLC*, 694 F. Supp. 3d 874, 881 (S.D. Tex. 2023) (citing *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987)).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the party from a *de novo* review by the District Court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown &*

*Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to, proposed findings and conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

**SIGNED** on July 3, 2025.

_____
Henry J. Bemporad
United States Magistrate Judge